[Civ. No. 4641. Second Appellate District, Division One.—July 12, 1927.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. LOS ANGELES PACIFIC NAVIGATION COMPANY (a Corporation), Appellant; SAN PEDRO TRANSPORTATION COMPANY (a Corporation), Defendant.

E. R. Young, Farnham P. Griffiths and McCutchen, Olney Mannon & Greene for Appellant.

Jess E. Stephens and Charles B. MacCoy for Respondent.

CONREY, P. J.—The findings of the court include the following facts: On the fifteenth day of April, 1920, the plaintiff was the owner of a motor-boat named "Thais," which was moored at a wharf or dock known as the First Street Dock, in and upon the waters of Los Angeles harbor. On the morning of that day appellant was operating and had the exclusive control and management of the freight steamer "West Hixton," which was then being operated, managed, and directed by appellant, and was under the command of Lewis C. Drewson, captain of said vessel. The "West Hixton" was proceeding under the direct command of Drewson down channel to said First Street wharf or dock under and by virtue of orders so to do issued to Captain Drewson by the port captain of appellant. Drewson was employed as captain of said vessel by appellant, and his salary as such captain was paid by appellant. But in its operation of the "West Hixton," and in its employment of Drewson, appellant claimed that it was acting only as agent of the owner, out of whose funds Drewson's wages were paid.

At the same time the motor-ferry "T. F." was owned and being operated by the defendant San Pedro Transportation Company in ferry service. Shortly before the collision hereinafter mentioned the ferry "T. F." started upon a trip across the harbor from the east side of the channel to the First Street ferry-slip on the west side of the channel. As the ferry "T. F." proceeded down channel for the purpose of docking at the First Street wharf, the "West Hixton" struck it, and then struck the north end of the First Street wharf, thereby displacing certain large timbers of the wharf, some of which fell upon the motor-boat "Thais," then moored under said dock, and thereby caused the damage of which plaintiff complains. The "West Hixton" at the time of and just prior to the said collisions was navigated by said Captain Drewson in a careless, reckless, and negligent manner, thereby causing said collisions. The court further found that there was no negligence in the management of the ferry "T. F.," and that the damage was caused solely by the negligence of appellant. Accordingly, judgment was rendered against the Los Angeles Pacific Navigation Company alone, and that defendant appeals from the judgment.

Appellant makes no attack upon the finding that the cause of collision and resulting damage was the negligent navigation of the "West Hixton" by Captain Drewson. Appellant presents as the sole ground of appeal its contention that it was not liable for the negligent navigation of the "West Hixton" by Captain Drewson. As stated by counsel for appellant, the question for consideration here narrows itself to a pure question of law, whether or not, under the undisputed evidence, Captain Drewson, as a matter of law, was an employee of the Pacific Navigation Company, or whether he was, as a matter of law, a subagent or coagent of that company, both the company and Drewson being agents of the owner of the "West Hixton," the United States of America. It is conceded that if the captain was a servant and employee of appellant, then appellant was liable for his negligent acts, and the judgment should be affirmed. On the other hand, appellant claims that if the captain was the servant and in the employ of the United States shipping board, then appellant was not liable for his acts, and the judgment should be reversed.

In support of said contention of appellant, three points are made. First, that defendant's relation to the "West Hixton" was fixed by contract between the defendant and the United States of America, owner of the ship, and that under that contract appellant was but an agent of the United States for the performance of specified duties, which did not include responsibility for the vessel's navigation. Second, that in navigating the vessel, the master of the "West Hixton" was the agent and employee of its owner, the United States of America, and that in relation to appellant, the master was but a coagent of appellant. Third, that an agent is not liable to third parties for the negligent acts of his principal, nor for the negligent acts of subagents or coagents of the principal.

The contract under which the "West Hixton" was being operated is in a standard form, known as "Form MO3." In part, it reads as follows:

"Agency Agreement for Managing and Operating Steel Cargo Vessels.

"This contract dated this 17th day of March, 1920, between the United States of America, owner of certain vessels, represented by the United States Shipping Board Emergency Fleet Corporation, hereinafter called The Corporation, and Los Angeles Pacific Navigation Co. managing agent, hereinafter called The Agent, witnesseth:

"1. The Corporation appoints The Agent as its agent for the management, operation, and conduct of the business of such vessels as it has assigned and may assign to The Agent for such purposes.

"2. The Agent agrees to act as such agent and to manage, operate, and conduct the business of such vessels as have been assigned or may be assigned for such purpose. While The Agent is to be held responsible for the management of the vessels, he shall be subject to the orders of The Corporation as to all matters affecting the use of the vessels when The Corporation deems the exercise of such power to be in the public interest.

"3. The Agent agrees to man, equip, victual, and supply the vessel, to provide and pay for all provisions, wages, fuel, fresh water, stevedoring, port charges, pilotage, agencies' commissions, consular charges, cabin, deck, engine room, and

other stores, and all other costs and expenses incident to the management, operation, and conduct of the business of the vessel *except as is otherwise provided herein.* . . .

''5. The Agent agrees to exercise reasonable care to avoid damage of every nature and to see that no damage to the vessel arises from loading improper cargo, from improper stowage, or from improper berthing of the vessel, and to see that all freight is prepaid, except when otherwise instructed by The Corporation, or where the prevailing customs in the particular trade as to prepayment of freight is to the contrary, in which case the utmost diligence on the part of The Agent shall be exercised both as to the acceptance of the cargo and in the collection of the freight money; failing to exercise such diligence The Agent shall be liable therefor.

''6. The Agent agrees to perform all the customary duties of a managing and operating owner of the vessels, and to perform, or cause to be performed, all the customary agency duties concerned with loading and discharging cargoes at all ports included in the vessel's itinerary and all things necessary for the protection and safeguarding of the interests of The Corporation. . . .

''8. The Agent, on behalf of The Corporation, agrees to collect at the proper time all freights and other moneys arising out of the management, operation, and business of the vessel and to advance all disbursements for customary cargo, managing, and operating expenses, and for all other reasonable expenses properly to be paid by a vessel owner, and to do all things which The Corporation is required in law and custom to do, either as owner of the vessels or as carrier of cargo.''

The contract then provides for deposit in bank, by the agent, of all moneys collected on behalf of the corporation, as a trust fund, which moneys shall be the property of the corporation. The contract further provided that the agent ''shall not mingle the same with moneys owned or held by The Agent, but shall make from such fund all disbursements authorized to be paid by The Agent for the account of The Corporation and shall, at such times and in such form as may be directed by The Corporation, render a full account of all moneys received. . . . '' It was provided further that

the agent "shall keep separate books of account in such manner and form as may be prescribed by, or approved by The Corporation, devoted exclusively to its agency business with The Corporation." The agent was to be compensated by a fixed fee, plus a stated commission on all net profits. For the purpose of determining net revenue, certain rules were established, one of·which was that "general average, *collision*, and other claims shall be charged to the vessel only to such extent as they are not completely covered and reimbursed by insurance."

We are satisfied that under this contract appellant was merely an agent of the United States for the performance of specified duties. In *Mallory S. S. Co.* v. *Garfield,* 10 Fed. (2d) 664, in the circuit court of appeals, second circuit, this same form of contract MO3 was fully considered, and the court said: "The terms of this agreement establish an agency. It clearly appears that the relation existing between the Fleet Corporation and the Mallory Steamship Company was that of agency, with duties and authority fully expressed." Accordingly the Mallory Steamship Company was held not liable for damages for delay in transportation of merchandise delivered to it for such transportation. In that case a petition for *certiorari* was denied October 18, 1926, by the United States supreme court. It is true that the circuit court in its decision distinguished between the liability on contract and a liability arising out of tort. "If a duty rested upon the Mallory line in its character apart from agency, and was one that the law imposed upon it, independent of its agency employment, then it might be liable for tort."

So here, if appellant was itself guilty of negligence proximately causing the injury for which respondent seeks to recover damages in this action, the agency contract would not protect appellant against that liability. The further question, therefore, is: "Was the negligence of Captain Drewson the negligence of appellant?" Appellant contends that the answer here depends upon the further question, "Was Drewson an employee of appellant?" We are of the opinion that in employing Drewson appellant was acting solely as agent of the owner of the ship, and that Drewson was the employee of the owner and not of the agent. Con-

ceding that, as respondent contends, the employee was under the control and subject to the orders of appellant, yet that control was merely control by the principal through the agent. The negligence did not occur by reason of appellant's direction to Drewson to move the ship to a certain place. It was negligence by the captain, consisting of carelessness in his manner of operation of the ship while executing the order. Under these circumstances the negligence must be attributed, not to the agent who gave the order under which the ship was being moved, but to the owner whose employee was guilty of that negligence.

If there had been a demise charter of the "West Hixton" to appellant, so that for the time being the ship was being operated by appellant as owner, appellant might well be held responsible for the captain's negligence. But the contract was not a demise charter. If it had been intended that appellant should run the ship as owner and not as agent, naturally the wages of the captain and other employees would have been made payable by appellant out of its own funds and not out of the funds belonging to the United States. Here, appellant was acting as an agent in providing the ship with officers and a crew. The contract throughout indicates that intention. "If, under the circumstances, it appears that the agent employed the subagent *for* his principal, and by his authority, expressed or implied, then the subagent is the agent of the principal; . . . and if damage results from the conduct of such subagent, the agent is only responsible to his principal in case he has not exercised due care in the selection of the subagent. For the tort of such subagent to third persons the agent would not be liable merely by virtue of this relation, but the principal would be liable as for the torts of any agent." (Mechem on Agency, 2d ed., sec. 332.) The Civil Code, section 2351, says: "A subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent." Again: "The rule is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a subagent employed by him in the service of his principal, unless he is guilty of negligence in the employment of such subagent or improperly co-operates in the

latter's acts or omissions." (*Baisley* v. *Henry*, 55 Cal. App. 760, 763 [204 Pac. 399].)

The judgment is reversed.

Houser, J., and York, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 8, 1927.