[Civ. No. 7656.   Third Dist.   Dec. 1, 1950.]

E. B. BISHOP, Appellant, v. C. C. KELLEY, Respondent.

776

Devlin, Devlin & Diepenbrock, and George R. Freeman for Appellant.

Glenn D. Newton, Duard F. Geis and Chas. H. Frost, Jr., for Respondent.

PEEK, J.—This cause originated in the filing of a complaint by appellant wherein he sought recovery of an automobile from respondent. The complaint was brief and contained only the usual allegations in such an action. Respondent's answer admitted possession of the vehicle; denied that he wrongfully possessed the same and affirmatively alleged that he was a part owner of the automobile and entitled to its possession. He also cross-complained, alleging the following: That early in 1940 the parties entered into an oral contract wherein it was agreed that on all contracts bid by appellant and awarded to him in his general contracting business respondent would be associated with him and would perform certain designated services which may be briefly described as follows: Checking proposed work before the contracts were let, sizing up quantities, equipment and personnel required, investigating work proposed to be done and the quantities of material, supplies, equipment and labor involved; estimating the cost of the work, preparing bids, and after contracts were obtained programming the work, supervising its progress and performance, maintaining liaison with contracting officials and assisting in the general administration involved. For such services he alleged that appellant agreed to pay him a salary and 25 per cent of the net profits on all jobs. He alleged further, however, that all equipment owned by appellant in his contracting business at the date of the agreement and all equipment which might thereafter be acquired was "to be depreciated in accordance with normal rates and written off . . . and charged to job expense"; that respondent "was to have an interest commensurate with his share of the net profits in such equipment charged to job expense according to the appraised value thereof at such times when it was completely written off the books" of appellant. Respondent further alleged that pursuant to the agreement he had per-

formed the designated services in connection with 24 separate contracts which had been let to appellant; that no true accounting had been made to him of his share of profits, that he asked for such accounting, and that appellant purported to terminate the contract on or about April 8, 1944. In his cross-complaint respondent referred to the automobile which was the subject of the complaint, and alleged it was acquired during the time the oral agreement was in force and was for his use in doing his work under the agreement; further that its cost had been written off and that therefore he had an interest therein, "the exact amount of which cannot be determined until an accounting has been had."

Without detailing the answer to the cross-complaint, it will be sufficient to say that appellant agreed in part with respondent's statement of the contract, but said that it contained no terms concerning any interest in appellant's business or equipment due to write-off as claimed by respondent, but did contain provisions that both a rental charge and interest on money advanced by appellant was to be a part of the cost before figuring net profits, and that on the Keswick job referred to in the cross-complaint a "$12\frac{1}{2}\%$ interest to another engineer was to be considered and charged as costs on said job." As to the contracts referred to in the cross-complaint, appellant denied any interest in respondent in three of them and as to the others stated that respondent had rendered some services as superintendent and was entitled to receive 25 per cent of "any net profits accruing therefrom except where jobs were taken on a machinery rental basis and no net profits as such resulted therefrom." He further alleged that if respondent had assisted him in any manner on the three excepted contracts such assistance was rendered as an employee only without any agreement as to any division of profits from those contracts. The appellant denied wrongful termination of the agreement, as alleged by respondent, and asserted that he "discharged" respondent on April 8, 1944, for failure to perform his agreed duties in connection with work being done. He further denied that respondent had any interest in the automobile for possession of which appellant had first brought his possessory action.

The court made findings of fact which were in substance as follows: That at all times appellant was and had been the owner of and entitled to the possession of the automobile referred to in his complaint; that respondent had been in the possession thereof as an employee of appellant, but had been

discharged as such employee and thereafter upon demand had refused to deliver the vehicle to appellant and still wrongfully detained it; that respondent's claim to be a part owner of the same was untrue. The court further found, responsive to the issues presented by the cross-complaint and answer thereto, that appellant was a general contractor, licensed as such under the laws of this state and so engaged in business; that respondent was at all times a registered civil engineer duly licensed and practicing; that on or about March 30, 1941, appellant and respondent entered into an oral agreement that on the Keswick contract for ballast production with the Southern Pacific Company, which had been bid in and awarded to appellant before the agreement, and in consideration of respondent's performance of the services to appellant as described hereinbefore and in appellant's cross-complaint, appellant would by the agreement pay to respondent an initial salary of $300 per month and in addition thereto 25 per cent of the net profits resulting from the performance of said contract; further that it was also then agreed that on any contract thereafter bid by and awarded to appellant in his general contracting business and on which contract respondent was to perform said services appellant, in consideration of such services, undertook to pay him an initial salary of $300 per month and in addition thereto 25 per cent of the net profits on each such contract. The court further found "that on the 31st day of July, 1941, the plaintiff wrote to the defendant a letter confirming and ratifying said oral agreement of the 30th day of March, 1941, agreeing with the defendant that on all work with which the defendant was to furnish services for the plaintiff that the defendant would receive twenty-five per cent (25%) of the net profits of said contract in addition to his salary." We think it well to quote that letter at this point:

"Dear Chas:

"For your protection you might put this in your files since we have nothing in writing as to our working agreement. It is my understanding that on all work with which you may be connected that you will participate in the net profits to the extent of 25%. This in addition of course to your salary."

The court further found that after the agreement had been entered into "as confirmed and ratified by said letter of July 31, 1941" and during the performance by respondent of said services on the 24 contracts referred to in the cross-complaint

appellant had from time to time increased respondent's salary, the increased salary to be paid "in addition to his receiving twenty-five per cent (25%) of the net profits of each contract bid by and awarded to the plaintiff in the general contracting business, and on which contracts the defendant was to perform services as aforesaid." The court also found that just prior to the commencement of work on each of the 24 contracts appellant had requested respondent to furnish said services and that respondent did so. Concerning appellant's affirmative allegations in his answer to the cross-complaint that it was agreed that rental charge would be made against job expense and an interest charge made for money advanced, the court found "That it is not true as a part of said agreement of March 30, 1941, and as confirmed and ratified by said letter of July 31, 1941, that it was understood and agreed that a rental charge chargeable to job expense was to be made by the plaintiff on his own equipment used by him in the performance of each of said contracts, and/or interest on money advanced by the plaintiff in the said contracting business." The court further found against appellant's affirmative allegation that on the Keswick job another engineer was to receive a percentage to be charged as job expense. The court found that pursuant to the oral agreement "and written confirmation and ratification thereof as aforesaid" respondent had performed the designated services and fully complied with his obligations under the agreement. The court found against appellant's affirmative allegations that respondent was not interested in the three disputed contracts and found that said contracts came under the agreement, respondent to receive 25 per cent of the net profits thereon the same as on the other 21. Concerning respondent's allegations in his cross-complaint that he was to acquire title in equipment used, the court further found that it was not true that he had any interest in or right to the possession of appellant's equipment used in the performance of the 24 contracts or in any equipment of appellant. The court likewise found "that it is true that defendant is entitled to receive as his compensation for the work and services he has performed for the plaintiff twenty-five per cent (25%) of the net profits earned on each and all of said twenty-four contracts hereinabove mentioned and as set forth in Paragraph VI of said Cross-Complaint in addition to the salary as hereinabove set forth." Further findings were that all but five of the contracts had been completely performed "at the time the defendant was discharged in violation of

and contrary to the terms of said oral agreement, namely, on or about the 8th day of April, 1944''; that appellant had performed substantial services on the remaining five contracts which were incomplete at the time of his wrongful discharge, but upon which substantial progress had been made; that he had been ready to complete his services, but was prevented from so doing by the wrongful discharge. Responsive to the claim that the agreement was within the statute of frauds, the court found that the agreement ''as confirmed and ratified by said letter of July 31, 1941'' was capable of being performed within a year from the making thereof. The court further found that the personal and contractual relations of the two men had been such as to establish an estoppel against appellant's contentions concerning the application of the statute of frauds.

As a matter of law the court concluded that respondent was entitled to recover from appellant 25 per cent of the net profits on all of the 24 contracts in addition to his salary, including in the latter an allowance of salary up to the date of the completion of the last of the contracts and was further entitled to an accounting before a referee to be appointed. The court thereupon made and entered an interlocutory judgment and order appointing a referee. It was decreed that appellant recover possession of the automobile or its value if delivery could not be made; that W. A. Knowles be appointed sole referee to take an account of the net profits received by appellant on each of the 24 contracts. It was then ordered as follows: ''For the purpose of said accounting, the net profits to be determined by the said referee upon the taking of said account shall be the difference between a sum made up at the end of each contract of the contract price or the receipts from the performance of the work on each contract received by plaintiff, the value of all stock, materials, machinery, tools and equipment on hand at the completion of each contract and used in the performance thereof, and another sum made up of the value of all similar physical items on hand at the beginning of each of said contracts, of all payments made, of losses sustained, if any, in the performance of each of said contracts, and liabilities incurred for operating expenses including the salary paid to defendant. No rental charge on any machinery or equipment owned by defendant shall be allowed as expense, but all equipment rental charges on equipment rented by him from others shall be considered as job expense. Likewise, the plaintiff shall not be allowed interest on moneys

employed by him in the performance of said contract but shall be allowed as expense all interest paid on borrowed capital employed by plaintiff in the performance of said contracts." It was further ordered that respondent recover from appellant 25 per cent of said net profits on the 24 contracts to be computed as stated in that part of the decree hereinbefore quoted, and all of the unpaid salary.

It was for the court to decide whether a contract had been entered into and to define and to limit each and all of the terms thereof. This the court purported to do. And the contract, as stated by it, corresponded exactly with the statement thereof contained in appellant's letter of July 31st which we have quoted. Furthermore the court expressly found that the contract as stated by it was confirmed and ratified by that letter. Since the contract, as so found, contained no reference to respondent's allegations concerning his acquisition of proprietory interest in equipment, it follows that the court, if not expressly, at least impliedly, found against the same. This conclusion is strengthened, as will be readily seen, by many other parts of the findings, conclusions and decree which we have set forth in detail. Thus the court found, contrary to respondent's pleading, that he never had any interest in any equipment, including the automobile, for the possession of which he had been sued and concerning which he had definitely alleged a part ownership in himself. Likewise, conformable to the court's statement of the contract and opposed to any claim of ownership of equipment advanced by respondent, the court found that respondent should recover on his cross-complaint a money judgment only, and recognized and declared no title or ownership of respondent in any of the equipment referred to. And although respondent had alleged in his cross-complaint that the automobile had "been written off" by charges made to job expenses pursuant to his allegations of the agreement, and that he therefore had an interest therein, the court found against these allegations notwithstanding the car was alleged to be within the embrace of the contract as claimed by respondent. Finally, by the formula which the court ordered the accountant to use in casting the accounts, it is clear that the court considered the agreement as containing nothing by which respondent could claim such title or interest.

■ The significance of these matters is that the status of respondent in his relations under the contract with appellant was by the court determined to be that of an employee who was to be compensated for his services in part by a salary and

in major part, if all went well, by a "bonus" or percentage of net profits through the completion by appellant of several and separate construction contracts entered into by appellant with third parties. (See 137 A.L.R. 52; see also same at page 134 et seq.) Thus when such profits were earned by the completion of a job an amount of money measured by these profits should have been ascertained and such sum would then have been payable to respondent as a money demand. For this sum he had a cause of action in debt, and the findings as made place his action on that basis. Hence he was properly entitled to an account. (*Nelson* v. *Abraham*, 29 Cal.2d 745, 751, 752 [177 P.2d 931].)

With respect to the method by which net profits should be ascertained the court made a specific finding of fact in relation to the first contract, that is, the Keswick job. Specifically it found, against the allegations of appellant, that it was not agreed another engineer, one Goodenough, should have a demand to a percentage of the profits made, which demand would be chargeable as an expense of the work. This finding was supported by evidence. The court found the contract to be, as we have said, a contract that could be simply and wholly expressed as one wherein the compensation of respondent would be measured by 25 per cent of the net profits derived by Bishop from the performance of the 24 contracts. We may say here that the record adequately supports these findings, although in many respects they were based upon conflicting testimony.

When the court had arrived at this point and appropriately ordered an account to be taken, nothing remained to be done except to take an account so as to arrive at the net profits accruing to Bishop for the performance of those contracts. While, of course, the taking of such an account would involve a great deal of detail work such as is usually performed by a referee in such matters, nevertheless the problem was one most common in the business world. To the conduct of a business greater or smaller amounts of capital are commonly required, and in Bishop's business a good deal of valuable equipment would be so required to be obtained by purchase or by lease from others. Such equipment would be consumed in appellant's business through obsolescence and the wearing out of each item of that equipment. Its consumption would constitute a cost of business and in determining profits an allowance would have to be made therefor. But, that allowance could not include anything more than consumption of

capital. It could not be measured or arrived at by a rental charge, as such, which would involve a return greater than consumption. Therefore the court was correct in directing the referee that no rentals, as such, be charged in favor of Bishop as job expense.

But when the court directed that consumption of capital equipment be in part arrived at as to each job by taking the value of each piece of equipment used upon a job as of the time it went upon the work, and its value when it left the work, it injected into the accounting a factor that had nothing to do with ascertaining profits of appellant's business. Appellant was not engaged in the purchase and sale of machinery. Incidental sales might, of course, be made, but that was not appellant's business. His business was the performance of contracts in heavy construction and the fluctuating values of the equipment he used and consumed could have nothing to do with profits or losses he might suffer while conducting his business. Such fluctuations do not come from the conduct of the business. They arise from causes wholly outside of the business with which appellant had nothing to do and over which he had no control. They are caused by the universal interplay of economic forces and in the normal play of those forces, without regard as to how appellant's business was conducted. What might seem to be a profit today might turn into a loss tomorrow. Insofar, therefore, as the result of the accounting would be affected by this false measure the account itself would be incorrect and the judgment given respondent would, to that extent, be unsupported.

It should be noted that these directions of the trial court cannot be claimed to find support as a condition or term of the agreement which the court found had been made between the parties. The record is replete with testimony that such matters were not discussed with the exception we have noted concerning the Goodenough item. As to the claims of both appellant and respondent that there were terms of the agreement that would affect the finding of net profit, the court had declared that they did not come within the provisions of the agreement. The Goodenough item alone excluded, the contract of the parties had been found by the court to have been limited, as we have stated, to an agreement to compensate respondent by paying to him a sum of money measured by his salary plus 25 per cent of net profits.

Having found the agreement to be as it did the court might have taken one of two courses with respect to the account.

It might have taken evidence as to the method and manner by which net profits of such a business should be determined, including, if thought appropriate, testimony of experts skilled in the matter of truly evaluating such profits. And having done so, the court might have determined how the account should be taken and instructed the referee, in consonance with that determination, to proceed to find the profits. The court might, in the alternative, have committed to the referee full power to determine, while taking the account, the proper method and manner to be used, and the referee then could have taken the same character of testimony which the court might have taken, and if given fact-finding powers his determination, if supported by the evidence, would, equally with that of the court, be upheld. But the record contains no support, and reason affords none, for the court's direction as to how consumption of capital equipment should be arrived at.

We conclude, therefore, that the first portion of appellant's attack upon the general question of net profits, i. e., that the trial court improperly directed the referee with reference to the item of depreciation of equipment, is well founded. However, the remaining portion of his argument on this general subject, is not well founded. His contentions in this regard are in effect but restatements of his general attack upon the sufficiency of the evidence, and must fail for the same reason as are hereinafter set forth in our discussion of such other contentions.

Appellant, in his general attack upon the findings and judgment, first contends that the court by its order made a new contract for the parties. We think this contention cannot be sustained. It is true that the contract, as found by the court, did not comply exactly with the claims of either party as to its content. But the agreement found was within the claims of both parties so far as its terms are concerned. Respondent's claims as to the content of the agreement were found in main part by the court to be true. The court found against his claim that the contract contained any agreement as to his acquiring an interest in appellant's capital equipment. On the contrary, it found the contract did not contain terms in accordance with appellant's contentions as to how net profits should be arrived at or as to the meaning of the term "net profits" as used by the parties. We conclude that the contract as found by the court was within the scope of the issues, was supported by adequate evidence, and the court's

determination on that subject did not constitute the making of a new contract.

■ Appellant contends next that the court's finding as to the terms of the contract were in direct conflict with and varied from the uncontradicted evidence adduced by the parties. Specifically, appellant contends that it stands uncontradicted that as a term of the agreement he was to receive rental for the use of his equipment. Appellant is wrong. There is ample evidence that with respect to rental which included any element of profit to Bishop, such rental was not to be an expense charged to a job. Kelley testified over and over again that there was no discussion or understanding that such rental should be charged, and he testified further that the agreement was simply for net profits, except as these profits might be in a sense invested in and come to be represented by newly acquired equipment. He testified that: "There was nothing in my relations with Mr. Bishop, or nothing he ever 'estimated' where he would charge me with rental of equipment, but we would charge jobs with rental of equipment. . . . Because we wanted to write that equipment off as fast as we could." He said that no statement he ever received from appellant showed he was renting equipment to him (Kelley) and that he was paid 25 per cent of the earnings and it made no difference whether his 25 per cent came in as operation earnings or equipment earnings. The record is replete with additional testimony upon which the court could well base its findings that appellant was not permitted in effect to "milk" a job by fixing arbitrary rentals of his own equipment and charging it to a job as job expense.

■ Appellant also contends that the court's findings as to the terms of the contract were in direct conflict with the practical construction of the contract as carried out by the parties. But here again we think appellant's claim cannot be sustained. Specifically on this point, appellant contends that there was uncertainty as to what the parties meant by their use of the phrase "net profits" and that their intention in this regard could therefore be ascertained in part by examining their acts and conduct over the period of the years that followed the making of the contract. There is no question about the legal proposition involved. But the record does not support appellant's assumption above stated. Appellant himself said there was no agreement as to how the net profits were to be figured, but "just the necessary, usual system," and that this went right down the line until on March 16,

1943, he wrote a letter to respondent telling him that from that time on they would charge against the jobs the same rental figures for equipment that were used for estimating the jobs. In addition to the foregoing there is much testimony supporting the court's conclusions upon the point involved.

Appellant further charges that the court erred in determining that respondent was entitled to participate in profits under the contracts covering the three disputed jobs. We think it would be profitless to treat this contention in detail and with respect to it will simply say that the question of whether respondent would be entitled to compensation based upon the profits made on these three jobs was the subject of conflicting testimony and that the trial court's conclusion as to these matters is adequately supported by the record. For instance, there was testimony with respect thereto that respondent performed many, if not substantially all, of the services called for by the agreement, was instrumental in the contracts being awarded to appellant and engaged thereafter in the performance of duties required of him in the performance of those contracts.

His next contention is that the contract of employment, having as he claims no specific term, could be terminated at any time at the option of either party. Insofar as the actual performance of duties and the exercise of authority by respondent is concerned, undoubtedly appellant could end those matters at any time. But his discharge of respondent without right, as found by the court upon substantial testimony, would not necessarily have the result that thereafter and in respect to jobs upon which at the time of wrongful discharge he was performing services, his rights would themselves be ended. By the contract between the parties, when a job within its purview was undertaken by appellant under contract there was an implied employment of respondent until that contract would be completed. This results from the nature of the agreement as to his compensation and if during that period he was wrongfully discharged and prevented from performing his duties further, then he would be entitled to have his compensation measured in accordance with the agreement, less perhaps any amount he could have earned in other employment in the meantime, a deduction for which the appellant has not contended. (See *Goudal* v. *Cecil B. DeMille Pictures Corp.*, 118 Cal.App. 407, 414 [5 P.2d 432, 7 P.2d 174].)

On May 16, 1943, and after some dispute had arisen between the parties as to what charges would be considered as

expense in determining net profits, appellant wrote to respondent stating that thereafter rentals would be charged against the job as job expense with respect to appellant's own equipment used upon the work. Appellant contends that after the receipt of that letter he varied the contract in accordance with its terms and from that time on job expense would be determined as set forth in the letter. This contention cannot be sustained. The record shows, among other reasons, that after the receipt of the letter the parties had a discussion at the conclusion of which they parted with the mutual understanding to see if there were some means of working out a settlement of their differences, that they continued on as they had from the beginning, accepting new contracts and otherwise operated as they always had, and that nothing further was ever done about it.

Although appellant next challenges the validity of the contract in issue as coming within the purview of the statute of frauds, he also states that such contention is predicated upon his interpretation of the evidence but that the court did not so construe the contract and therefore he does not believe the contract does come within that statute. To such conclusions we would add but one element—that the findings of the trial court in this connection are amply supported by the evidence.

Further it clearly appears from the record that the contract was substantially performed by respondent in all particulars up to the time that further performance was prevented by his wrongful discharge by appellant. Such performance took the agreement out of the statute of frauds. (12 Cal.Jur. 926.) It should also be noted that appellant did not plead the statute of frauds but has raised it for the first time on appeal. While no question has been raised regarding findings of the court as to estoppel we are convinced that the record amply supports the same. (12 Cal.Jur. 934.)

Appellant contends that the court erred in holding that respondent was wrongfully discharged. From what has been said before, this contention cannot be sustained. The stated reasons for discharge contained in the letter in which appellant informed respondent his services were no longer required and would not be accepted were, generally speaking, that he was guilty of excessive drinking, inattention to duty and failure to perform generally his obligations. The testimony taken upon these matters was sharply in conflict, and

the finding of the court against the contentions of appellant herein are amply supported.

From the foregoing it is readily apparent that in general the conclusions of the trial court must be affirmed except insofar as such conclusions pertain to the determination of net profits as affected by the amount to be allowed plaintiff for the use of his equipment, and as to that portion the judgment must be reversed and the cause remanded for further proceedings in accordance with the views herein expressed. We observe that the usual end result of an accounting proceeding is a money judgment in a specific sum arrived at by various mathematical computations. In the present case that sum cannot be ascertained by the reason of the lack of one single ultimate fact—the cost to plaintiff of the use of his equipment. Whether or not such a situation presents a proper case for further proceedings under the provisions of section 956 (a) of the Code of Civil Procedure (assuming the interests of justice would be served thereby and the cause disposed of by a single appeal) is immaterial to a determination of this appeal since no application was made pursuant to that section. Hence we are compelled to reverse the judgment and remand the case for a new trial for the sole and limited purpose of determining the cost to appellant of the use of his equipment. In so doing the trial court shall take such additional evidence, either before itself or before a referee, as may be necessary for a proper determination of the cost to appellant for the use of his equipment. In all other respects the recasting of said account shall be subject to those findings of the trial court not inconsistent herewith.

For the foregoing reasons the judgment is affirmed except as herein otherwise determined, and the cause is remanded for further proceedings in accordance with the views herein expressed. Each party to bear his own costs.

Adams, P. J., and Van Dyke, J., concurred.

A petition for a rehearing was denied December 30, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1951. Traynor, J., and Schauer, J., voted for a hearing.