328 P.2d 1009]

[Civ. No. 22746.   Second Dist., Div. Three.   Aug. 18, 1958.]

JANITH PHILLIPS BOND, Appellant, v. KENNETH S. PITZER et al., Respondents.

Morris Lavine for Appellant.

Arthur M. Reilly for Respondents.

WOOD (Parker), J.—In this action for damages for personal injuries, judgment upon a verdict was against defendants Catherine and William Aull and was in favor of defendants Kenneth and Russell Pitzer. (The verdict, as to Russell, was directed.) Plaintiff appeals from the portion of the judgment in favor of the Pitzers.

Plaintiff's automobile was parked at the curb on a street in Los Angeles, and plaintiff was standing immediately back of her automobile. A Ford automobile was parked a few feet back of plaintiff's automobile, and a Chevrolet automobile owned by the Aulls was parked a few feet back of the Ford. Catherine Aull was in the front seat of the Aull automobile. That automobile moved forward and struck the Ford, and caused the Ford to move forward and strike plaintiff and push her against the rear bumper of her automobile. Plaintiff was "pinned" between the rear bumper of her automobile and the front bumper of the Ford, and she was severely injured.

On the date of the accident, April 22, 1955, and for approximately five years prior thereto, William and Catherine Aull, husband and wife, were employed as janitors of an apartment house. Kenneth Pitzer, the owner of the apartment house, resided in Berkeley. Russell Pitzer, the manager of the apartment house, resided in Pomona. Pauline Powell was employed as resident manager of the apartment house. Plaintiff was a tenant there.

Appellant contends that the verdict as to the Pitzers is contrary to law and the evidence. With reference to the verdict

in favor of Kenneth Pitzer, appellant argues that Kenneth, as owner of the apartment house, was liable for the acts of his employee, Mrs. Aull, committed in the scope of her employment; that the evidence shows that at the time of the accident Mrs. Aull was on her way to the market to "get some soap powder and other things for the apartment"; and that the jury should have found that she was then acting within the scope of her employment. With reference to Russell Pitzer, appellant contends that the judge erred in directing a verdict in his favor. She argues that Russell, as manager of the apartment house, was also liable for the acts of Mrs. Aull committed within the scope of her employment; and that the question as to whether she was acting within the scope of her employment should have been submitted to the jury.

Appellant (Mrs. Bond) testified that shortly before noon on the day of the accident (Friday), while she was polishing her car in front of the apartment house, Mrs. Aull came out of the apartment house and said: "Mrs. Bond, would you take me down to the garage or some place to get the oil changed in my car; would you show me how to put the brakes on and stop the car, and take me down to Ralph's Market to get some soap powder and something for the building?"; shortly thereafter they entered Mrs. Aull's automobile, and Mrs. Bond drove the automobile to a Chevrolet garage; they returned to a place in front of the apartment house for the purpose of getting a shopping list from Mrs. Bond's mother—a list of articles to be purchased at Ralph's Market; Mrs. Bond parked the Aull automobile "two or three cars" behind her own automobile; she put the brakes on, turned off the ignition, and left the key "in the ignition"; she got out of the Aull automobile and called to her mother and asked whether the shopping list was ready; her mother said that the list was not ready; Mrs. Aull remained in the automobile; while Mrs. Bond was waiting for her mother to finish the list, she continued polishing her automobile, and she opened the automobile trunk; she heard Mr. Aull ask Mrs. Aull to check "on the gasoline" in the automobile; the next thing she (witness) remembered was that she was hit by the car (Ford) that was behind her.

Mrs. Bond testified further that about 10 days before the accident she accompanied Mrs. Aull to Ralph's Market; on that occasion Mrs. Aull purchased 12 cans of Ajax cleaner; Mrs. Aull told Mrs. Bond that she was getting the Ajax cleaner for the apartment; subsequently she observed that

Mrs. Aull used Ajax cleaner in cleaning the apartment where Mrs. Bond resided.

Mrs. Meehan, a witness called by plaintiff, testified that about noon on the day of the accident she heard a conversation between Mrs. Bond and Mrs. Aull; Mrs. Aull requested Mrs. Bond to go to the market for some cleaning things for the apartment, and to "stop off" to get the oil changed; Mrs. Bond acquiesced and said that she would get her grocery list from her mother and do that shopping at the same time.

Mrs. Aull testified that on the morning of the accident, while she was walking down the steps in front of the apartment house, Mrs. Bond asked her if she wanted to go for a drive; Mrs. Bond said that she could show Mrs. Aull some "parts about the car [new car of the Aulls]"; she (witness) said that she was on her way to Victor's (a grocery store about one-half block from the apartment house) to get some things to prepare for the Sabbath; Mrs. Bond said, "Oh, come on and let's go"; she (witness) said that she would go over to the Chevrolet place with Mrs. Bond to ascertain how soon the oil should be changed in the automobile; Mrs Bond drove the automobile of the Aulls to the Chevrolet place and back to a place in front of the apartment house; Mrs. Bond parked the Aull automobile, and she (witness) and Mrs. Bond got out of the automobile; a few minutes later, Mrs. Aull got back in the automobile to remove the keys; when she got in the automobile, it moved forward and hit the Ford, and the Ford hit Mrs. Bond.

Mrs. Aull testified further that she had never driven an automobile, and she had never tried to drive when she was alone in an automobile; she did not work at the apartment house on Fridays (the accident occurred on Friday); she never bought supplies for the apartment; she did not say anything before the accident "about wanting to go to Ralph's store or any other store to pick up anything for the" apartment house.

Mrs. Powell testified (by deposition) that she was, and for 17 years had been, manager of the apartment house; her duties included the hiring of janitors and the ordering of supplies; she had hired Mr. and Mrs. Aull; Mr. Aull did most of the janitor work, and Mrs. Aull assisted in sweeping and dusting the apartments; Mrs. Aull did not work Fridays; Mrs. Powell bought soap supplies, including Ajax cleaner, from a salesman who called at the apartment house; she had never run out of "any of these supplies" between visits of the salesman; Mrs.

Aull never "went" to purchase Ajax cleaner or any other cleaning supplies for the apartment house.

■ The evidence was sufficient to support the verdict in favor of Kenneth Pitzer (the owner). The jury could find, upon substantial evidence, that Mrs. Aull was not on her way to the market to get soap powder or other things for the apartment house, and that Mrs. Aull was not acting within the scope of her employment at the time of the accident.

■ The court did not err in directing a verdict in favor of Russell Pitzer, who was the manager of the apartment house. Section 2351 of the Civil Code provides, "A subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent." In *Malloy* v. *Fong*, 37 Cal.2d 356 [232 P.2d 241], it was said, at pages 378-379: "The doctrine of *respondeat superior* is not applicable to the relationship between a supervisor and his subordinate employees. The supervisor occupies an economic and legal position quite different from that of the employer. . . . Section 2351 of the Civil Code . . . has been uniformly interpreted to exempt superior employees from vicarious liability to third persons for the tortious conduct of subordinates."

■ Appellant contends that the court erred in sustaining an objection of the Pitzers to certain testimony of Mrs. Murray.

Mrs. Murray, called as a witness by plaintiff, testified that she is plaintiff's sister; on April 29, a week after the accident, she (witness) had a conversation with Russell Pitzer in Mrs. Powell's apartment, when Mrs. Russell Pitzer and Mrs. Powell were present; Russell Pitzer told her that he did not feel that there was anything he could do about paying plaintiff's medical expenses and he did not think that there was anything he could be "involved with"; after she left the apartment, and while she was in the hall, she heard a conversation "going on in Mrs. Powell's apartment"; she heard Russell Pitzer's voice.

Then plaintiff's attorney asked Mrs. Murray what Russell Pitzer said in the conversation she heard while she was in the hall. The attorney for the Pitzers objected to the question on the ground that the statement of Russell Pitzer was not material as to Russell Pitzer, and it was irrelevant and hearsay as to Kenneth Pitzer. Plaintiff's attorney then offered to prove that Russell Pitzer said: "If you had been properly managing this apartment this accident would not have happened. I can be held responsible for this accident. Catherine

was an employee of the apartment at the time. It has put me in a terrible position." The objection was sustained.

Appellant argues that the statement of Russell Pitzer was an admission by Kenneth Pitzer (the owner), through his agent Russell Pitzer, "to the effect" that Mrs. Aull, the janitress, was on an errand for the owner at the time of the accident and that the owner was liable for damages; that the statement was in the nature of a rebuke for the failure of Mrs. Powell to provide sufficient cleaning materials for the apartment house; that the statement was an admission "against interest" by Russell Pitzer, the agent, in the course of his employment; and that the statement was a part of the res gestae. The effect of appellant's argument, with respect to the first sentence of the alleged statement, seems to be that the first sentence could be construed to mean that Mrs. Powell had not properly managed the apartment in that she failed to provide enough Ajax cleaner and by reason of such failure Mrs. Aull, the janitress, "was on her way" to the market, at the time of the accident, to get Ajax cleaner for the apartment house. The argument is conjectural. The alleged statement was indefinite. There was no reference therein to cleaning materials or any factual matter which had any connection with the happening of the accident. The portion of the statement to the effect that Russell "could be held responsible" for the accident was an erroneous conclusion of law. The portion of the statement to the effect that Catherine (Mrs. Aull) was an employee was not a statement that she was acting within the scope of her employment when the accident occurred. The portion of the statement that the accident put Russell in a terrible position was not a statement of any fact indicating that he was legally liable for damages. The statement did not constitute an admission "against interest" by either of the Pitzers. As above shown, the alleged statement was made seven days after the accident. It was not a part of the res gestae. The court did not err in sustaining the objection to said proposed testimony of Mrs. Murray.

A further contention of appellant is that the court erred in sustaining an objection to appellant's offer to introduce in evidence a photograph of herself, which photograph was taken within a few minutes after the accident and while she was lying on the street. (The photograph showed that plaintiff's legs were broken. The attorney for the Aulls stated [out of the presence of the jury] that the photograph "shows a horrible condition.") The judge, in sustaining the objection, said

that he believed there could not be a calm consideration of the evidence if the photograph were received in evidence. It is not necessary to determine this contention regarding the admissibility of the photograph. As above stated, this appeal relates only to the portion of the judgment which was in favor of the Pitzers. Appellant obtained a judgment for damages against the Aulls, and apparently that judgment has become final. The photograph, if received in evidence, would have related to the issue of damages. The photograph did not relate to the question of liability of the Pitzers for the acts of Mrs. Aull. In view of the verdict that there was no liability on the part of the Pitzers, and in view of the above conclusions requiring an affirmance of the judgment as to them, it is not necessary to determine the question (as to the photograph) which relates to the issue of damages.

A further contention of appellant is that the court erred in sustaining an objection to certain testimony of appellant. Appellant testified that at the time she was trapped between the two cars she heard defendant William Aull make an exclamation. When she was asked to state the exclamation, counsel for the Pitzers objected on the ground that it was hearsay as to them. The objection was sustained. That testimony, which was received as to the Aulls, was as follows: "Catherine, for God's sake stop that car. You are killing this woman." The exclamation was not material to the question whether Mrs. Aull was acting within the scope of her employment as an employee of Kenneth Pitzer, the owner of the apartment house. The verdict in favor of Kenneth Pitzer included an implied finding that Mrs. Aull was not acting within the scope of her employment. In view of the verdict in favor of the Pitzers and in view of the above conclusions requiring an affirmance of the judgment, it is not necessary to determine the admissibility of the exclamation as to the Pitzers.

The attempted appeal from the verdict is dismissed. The judgment in favor of Kenneth Pitzer and Russell Pitzer is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.