[Civ. No. 18676. First Dist., Div. One. May 9, 1960.]

ALEXANDER NIZUK, Appellant, v. ALBERT GORGES et al., Defendants; THE PORTER CORPORATION (a Corporation), Respondent.

Morton L. Silvers, Benjamin M. Davis and John H. Sutter for Appellant.

Carl Hoppe for Respondent.

TAYLOR, J. pro tem.*—This is an appeal from a summary judgment rendered in favor of the defendant Porter Corporation.

The plaintiff's second amended complaint alleges that on or about November 15, 1956, in San Francisco, the defendant Gorges assaulted the plaintiff and further alleges that at the time of the assault the defendant Gorges was the agent, servant, and employee of defendants Great Western Furniture Company, Inc. of Oakland, Great Western Furniture Com-

*Assigned by Chairman of Judicial Council.

pany, Inc. of San Francisco, and defendant Porter Corporation, and was acting within the course and scope of said agency. Plaintiff prays for compensatory and punitive damages. The defendant Porter Corporation filed its answer to the second amended complaint, a cross-complaint for recoupment against Gorges and the Great Western Corporations and subsequently a motion for a summary judgment.

The motion for summary judgment was based upon two unsigned depositions of the defendant Gorges and an unsigned deposition of one Gelb, the office manager of Great Western. Gelb's deposition has attached, as exhibits, a Thrift Club Plan Franchise and rider entered into between the Porter Corporation and Great Western, and also a contract between defendant Gorges and Great Western.

The Thrift Club Franchise provided that the grantee (Great Western) was not to infringe upon grantors' (Porter) copyrights, that the grantors were to disclose necessary information and forms for the successful operation of the plan, and that the grantee would affix copyright notices in grantors' name to all forms used, said forms to be approved by the grantors. Also, all details of grantee's club operations including personnel employed and merchandise used as premiums were subject to grantors' approval. The grantee was to pay the grantor $1,000 original organization and supervisory expense at once and then $2.00 for each club membership written and 2 per cent of the gross sales made to Thrift Club members. The grantee was to render monthly accountings and also pay monthly remittances for royalties due, and the grantors reserved the right of access to the grantee's records to check "gross sales." Royalties became established when the purchaser's credit was accepted by the grantee. The grantee was to furnish suitable office space and telephone service without cost to the grantors. Membership redemptions were to be acceptable at any of the grantee's stores, and grantors were not responsible for any intercompany transactions. The agreement was to remain effective until 50,000 Thrift Club memberships were obtained.

The rider to the Thrift Club Franchise extended the rights and privileges of the franchise to all six of Great Western's related and affiliated stores and provided: "Grantor shall take charge of, manage, and supervise Grantee's Thrift Club Departments, and in its sole discretion shall have full and complete charge of all details of the Thrift Club Departments' operations, including (but without limiting) the employment,

management, and supervision of all personnel employed by Grantee for the operation of the said departments and the selection and purchase of merchandise required for use as premiums in the operation of the said Thrift Club Plan." (Par. 3, Exh. 10A.)

"In its sole discretion The Porter Corporation shall determine the areas or districts in which the Thrift Club operations shall be conducted, the extent thereof, and the performance of all production of Thrift Club memberships to be secured." (Par. 4, Exh. 10A.)

"This Franchise shall take effect not later than December 1, 1955, it being understood that The Porter Corporation shall have until that time in which to organize the Thrift Club Department and commence the management and supervision thereof." (Par. 5, Exh. 10A.)

The contract between Great Western and Gorges prepared by Great Western's lawyers provides that Great Western is in the business of selling furniture and appliances, etc., and that Gorges is an independent contractor in the business of soliciting accounts and obtaining customers and that he will undertake to solicit for Great Western on a commission basis (setting forth the commission scale). Gorges was to pay his own costs and it was specifically provided that the agreement was not one of employment or creating an agency. Either party could terminate the agreement at any time upon notice to the other party. Though Gorges is designated as an independent contractor in the agreement, plaintiff alleged in his complaint that Gorges was the agent and employee of both Great Western and Porter Corporation, and there is no contention by respondent Porter Corporation in this appeal that he was anything other than an agent or employee of Great Western.

The depositions disclose that the Thrift Club Plan was a program designed to induce people to make purchases at one of Great Western's stores. The members generally paid $1.00 a week to collectors such as Gorges, received a merchandise gift on the first payment, and after the weekly payments came to $15 the customer received $15 credit on any purchases made at any Great Western store for $69 or over.

The depositions further disclose, in addition to the contents of the agreements, that the Thrift Club operation was actually housed in Great Western's stores. Its office manager, one McDowell, was brought in by Porter Corporation, but both he and his secretary were carried as employees on Great

Western's payroll and deductions were made by it for social security, etc. All contracts negotiated with members of the Thrift Club were in the name of Great Western, merely bearing Louis Porter's copyright notice in small print at the bottom of the page. Office forms and interoffice memos carried the name of Porter. All collections made under the Thrift Club Plan were delivered by the collectors to McDowell and then to Great Western, and Porter Corporation was paid its royalties by monthly checks from Great Western. Mr. Gelb, Great Western's office manager, testified that Great Western had nothing to do with the control of the activities of any of the collectors like Gorges, or with hiring or firing. He described Great Western as only the "supervising agent" of Thrift Club collectors. Mr. Porter, of the Porter Corporation, had defendant Gorges sign the employment agreement with Great Western and explained the terms of employment to him. Porter Corporation had charge of Gorges' activities, i.e., delineated his duties and determined his routes. He was paid his commissions each week by the Thrift Club's office manager, McDowell, from Great Western funds and with Great Western checks. Gorges testified that during the time he was employed by Great Western, he was "working for the Thrift Club, which is the Porter Corporation" and that he was discharged by Mr. Porter. Gorges was carrying out the instructions of office manager McDowell at the time the alleged assault took place. The factual details of the assault need not be explained for purposes of this appeal.

The crucial question is whether a summary judgment should have been granted to defendant Porter Corporation on the ground that Gorges was the subagent and employee of Great Western, and that Porter Corporation as the original agent was free from any tort liability arising out of the conduct of Gorges, under the provisions of section 2351 of the Civil Code.

■ Motions for summary judgment are provided for in section 437c of the Code of Civil Procedure and in deciding this case the court must bear in mind that in passing upon a motion for summary judgment the primary duty of the trial court is to decide whether there is an issue of fact to be tried. If it finds one, the motion must be denied and the court must not pass upon the issue of fact itself. (*Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62]; *Eagle Oil & Refining Co.* v. *Prentice*, 19 Cal.2d 553, 555 [122 P.2d 264].)

Section 2351 of the California Civil Code provides "A sub-

agent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent.'' If the undisputed facts make this code section applicable, the courts have consistently absolved the original agent or middleman from liability as a matter of law. (*Towt* v. *Pope,* 168 Cal.App.2d 520 [336 P.2d 276]; *Bond* v. *Pitzer,* 163 Cal. App.2d 1, 5 [328 P.2d 1009]; *Malloy* v. *Fong,* 37 Cal.2d 356 [232 P.2d 241].) ■ Where there is no conflict as to the terms of a contract, and where its provisions are not uncertain or ambiguous, its ''meaning and effect . . . and the relation of the parties to it thereby created . . . become a question of law to be decided by the court.'' (*Green* v. *Soule,* 145 Cal. 96, 100 [78 P. 337]; *Batt* v. *San Diego Sun Pub. Co.,* 21 Cal. App.2d 429, 437 [69 P.2d 216]; *Robinson* v. *George,* 16 Cal.2d 238, 242-243 [105 P.2d 914].)

■ It is our opinion that the written contracts adequately define the relationship of the parties, that the testimony of the witnesses in the depositions as to the actual conduct of the parties is not in conflict therewith and that as a matter of law defendant Gorges was an employee and subagent of Great Western under the supervision of Porter Corporation as managing agent. We conclude that Porter Corporation's motion for a summary judgment was properly granted and the judgment should be affirmed.

The depositions and agreements attached thereto show that defendant Great Western established its Thrift Club Plan in its own name, to be located as a department in its own stores, to be operated by *its own employees,* one of whom was Gorges, entirely at its own expense including the cost of installation and for the sole purpose of advertising and stimulating its business. It is equally clear that Great Western retained Porter Corporation as a corporate management agent with copyrighted know-how on a commission or royalty basis to install, take charge of, manage, and supervise these Thrift Club departments including the hiring, discharging and supervision of personnel.

In *City of Los Angeles* v. *Los Angeles Pac. Nav. Co.,* 84 Cal. App. 413 [258 P. 409], the Los Angeles Navigation Company entered into an agency agreement to manage, operate and conduct a shipping business for the United States Government. Under the contract, the Navigation Company was to man all vessels and carry out all the duties of an operating owner.

All employees were paid by the Navigation Company from funds of the United States Government. The Navigation Company was sued for damages arising out of the alleged negligent operation of one of the government's ships. The District Court of Appeal in reversing the trial court's judgment against the Navigation Company held that the captain was an employee of the United States Government and not an employee of the Navigation Company. The court relied on Civil Code, section 2351 and held, "The rule is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a subagent employed by him in the service of his principal, unless he is guilty of negligence in the appointment of such subagent or improperly cooperates in the latter's acts or omissions." (*Baisley* v. *Henry*, 55 Cal.App. 760, 763 [204 P. 399].) There is no contention that defendant Porter Corporation was negligent in hiring or directing defendant Gorges. The court in the Los Angeles case stressed the facts that the ships were owned by the United States Government and the employees were paid from United States funds. Both of these factors are present in the instant case.

The plaintiff contends that the great weight of the evidence shows that Gorges was the employee of the Porter Corporation. The franchise contract between Great Western and Porter Corporation repeatedly refers to those who are to work in the Thrift Club Department as grantee's (Great Western's) *employees.* Gorges' contract of employment was with Great Western, which reserved the right to terminate his services at any time. "The power to employ and discharge has been called a determinative factor, and it has been said that perhaps no single circumstance is more conclusive to show an employment relationship than the right of the employer to terminate the service whenever he sees fit." (32 Cal.Jur.2d 405; *Claremont Country Club* v. *Industrial Acc. Com.*, 174 Cal. 395, 398 [163 P. 209] ; *Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9, L.R.A. 1918F 177].) Under the terms of the agreement Gorges was obligated to solicit customers for Great Western and for no one else. He was paid by checks signed by Great Western and drawn on Great Western's funds, and he was selling memberships in Great Western's Thrift Plan. All contracts he secured from customers were with Great Western and all monies he collected were paid to Great Western. He was under the direct orders of one McDowell, office manager of the Thrift Club Plan, who

was also on Great Western's payroll as an employee, at the very time of the assault.

Plaintiff in arguing that Gorges was Porter Corporation's employee cites the facts that Porter hired and discharged Gorges and supervised all the details of his work. The agreement between Great Western and Porter Corporation clearly shows that as supervising and managing head of Great Western's Thrift Plan departments, these were the very duties Porter Corporation was retained by Great Western to perform.

While it is true that the right to control is the primary test of employment or agency (*Cox* v. *Kaufman,* 77 Cal.App.2d 449, 452 [175 P.2d 260]), this test does not apply to a managing agent who is authorized by the employer to supervise his employee's activities. As stated in *City of Los Angeles* v. *Los Angeles Pac. Nav. Co., supra,* 84 Cal.App. 413, 418, ''Conceding that, as respondent contends, the employee was under the control and subject to the orders of appellant, yet that control was merely control by the principal through the agent.'' We conclude that defendant Gorges was the agent and employee of Great Western at the time of the alleged assault.

The plaintiff, in contending that Porter Corporation's status was not that of supervising or managing agent of Great Western's Thrift Club departments distinguished the Los Angeles case in that there the agreement between the United States and the Navigation Company was designated an ''agency'' agreement and that the Navigation Company was referred to throughout as the government's agent. However, the fact that an agreement is not called an agency does not affect the actual relationship of the parties (*American Marine Paint Co.* v. *Nyno Line,* 70 Cal.App. 415, 422 [233 P. 366]).

''Whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreements or acts.'' (*Rezos* v. *Zahm & Nagel Co.,* 78 Cal.App. 728, 731 [246 P. 564].)

The plaintiff further argues that under the facts of this case, a finding that Porter Corporation was operating the Thrift Club departments as an independent contractor rather than a supervising agent would be more reasonable. The right of control Great Western reserved over the affairs of the departments precludes any such conclusion. As stated in *Robinson* v. *George,* 16 Cal.2d 238, 244 [105 P.2d 914], ''[T]he record with regard to George's duties does not show that the defendant corporation exercised any particular con-

trol over the details thereof, but, as plaintiff maintains, in determining the status of an employee as distinguished from an independent contractor, it is the existence of the right of control and not the use or lack of use of it, that is important. . . ." Great Western employed by contract and retained the authority to discharge all the solicitors working under defendant Porter Corporation. The Thrift Club department manager McDowell was carried on Great Western's payroll as an employee. Great Western provided the initial costs, *current operating expenses*, merchandise, and the physical accommodations for the various Thrift Clubs as departments within its own stores. All monies collected were paid to Great Western, and Porter Corporation was given monthly remittances by Great Western for royalties earned. The fact that defendant Porter Corporation was paid by commission or royalty and received a percentage of the gross sales from Thrift Club sales is not inconsistent with the agency or employment relationship. (*Phillips* v. *Larrabee*, 32 Cal.App.2d 720, 726 [90 P.2d 820] ; *Cameron* v. *Pillsbury*, 173 Cal. 83, 85 [159 P. 149] ; *Bishop* v. *Kelley*, 100 Cal.App.2d 775, 782-783 [224 P.2d 814].)

Plaintiff argues that the true relationship between the Great Western and Porter Corporation is one of joint adventure and that as joint adventurers Gorges was the employee of both and both are liable for his torts. (*Engineering Service Corp.* v. *Longridge Inv. Co.*, 153 Cal.App.2d 404 [314 P.2d 563].) The most essential elements of a joint adventure are a community of interest in the object of the undertaking, and a sharing of profits and losses. (*Wiltsee* v. *California Emp. Com.*, 69 Cal.App.2d 120, 128 [158 P.2d 612] ; *Nelson* v. *Abraham*, 29 Cal.2d 745, 749 [177 P.2d 931] ; 28 Cal.Jur.2d 478, 480 ; *Zorich* v. *Petroff*, 152 Cal.App.2d 806, 810 [313 P.2d 118].) These characteristics are not present in the relationship between Great Western and Porter Corporation. There is no community of interest. The Porter Corporation is a management firm, with copyrighted information, retained *on a royalty or commission basis* to install and operate Great Western Thrift Clubs. Great Western is in the furniture and appliance business and has established its Thrift Club departments *for the purpose of stimulating sales* in its stores. There is no sharing of profits and losses. Great Western has given Porter Corporation $1,000 for original organizational expense, furnished the physical location, and paid all operating costs of the Thrift Club departments. The Porter Corporation is

paid $2.00 for every club membership written and 2 per cent of the gross sales, regardless of whether, after the payment of all expenses, the Thrift Club Plan is a debit or credit operation to Great Western. Under no reasonable interpretation of the evidence can the relationship be considered one of joint adventure.

The plaintiff contends that section 437c of the Code of Civil Procedure specifically requires that motions for summary judgment must be supported by affidavits and that depositions can not be substituted therefor. We do not agree. Section 2016, subdivision d(2) of the Code of Civil Procedure allows the use of depositions of adverse parties, their officers and employees, etc. in support of a *motion*. Plaintiff's argument that this general provision must give way to the specific requirement of section 437c presupposes that the sections are inconsistent. Actually, a deposition has all of the significant attributes of an affidavit and more. Not only is it a statement, in question and answer form, taken under oath, but it also affords the privilege of cross-examination to the opposing party, thus giving it added reliability. In *Desny* v. *Wilder,* 46 Cal.2d 715, 725 [299 P.2d 257], Mr. Justice Schauer noted, without comment, ''Thereafter defendants filed notice of motion for summary judgment. The motion was heard upon affidavits filed by defendants *and upon plaintiff's deposition,* which is treated as an affidavit in opposition to the motion.'' (Emphasis added.) In the recent case of *Thomson* v. *Honer,* 179 Cal.App.2d 197, 203-204 [3 Cal.Rptr. 791], the District Court of Appeal for the Fourth District squarely, and we think correctly, held that a deposition can be used in support of a motion for summary judgment under Code of Civil Procedure, section 2016, subdivision d(2).

The plaintiff raises the objection that the depositions were not signed, as required by section 2019 of the Code of Civil Procedure. The parties had stipulated that the 1958 Gorges deposition could be used for any purpose without the required signature. While there was no signature on the 1957 Gorges deposition or the Gelb deposition, nor stipulations allowing their use for any purpose without signature, the transcript shows that no motion to suppress or objection to their consideration by the court was made at the hearing on the motion for summary judgment. In fact, the record discloses that both parties relied upon the depositions to sustain their respective positions. Error in the reception of evidence may not be asserted for the first time on appeal. (*Bates*

v. *Newman,* 121 Cal.App.2d 800, 805 [264 P.2d 197].)
Objections against the admission of depositions on the ground of supposed illegality must be made in the court below at the trial. (*Clark* v. *Gridley,* 35 Cal. 398, 402.)

The plaintiff argues that Gelb's deposition will not support a summary judgment because it shows on its face that defendant Great Western failed to produce all documents required to permit the trial court to determine if there was a triable issue. Gelb admitted in his deposition that there were hundreds of letters in the file, that he wouldn't know offhand of anything that would change the relationship of the parties from that indicated in the written agreements, but he said, "there might be some minor things that I am not thinking of right now." Great Western's counsel then offered all counsel full access to the complete correspondence and agreed to a continuance of the deposition. Whether counsel for the plaintiff availed himself of this offer to peruse the files we do not know. In any event, it would appear that no further depositions were taken, and the record indicates that plaintiff's counsel filed no counteraffidavits but stood on the relationship of the parties as established by the depositions in arguing his case to the trial court. Under the circumstances we see no merit in plaintiff's contention raised for the first time on appeal. As stated in *Schneider* v. *McKesson & Robbins, Inc.,* 254 F.2d 827, 831, "The appellants were not entitled to a denial of the motion merely on the basis of a hope that some evidence might develop at the trial."

The judgment is affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.