[Civ. No. 22050.   Second Dist., Div. Three.   July 26, 1957.]

STEVE ZORICH, Appellant, v. BORIS PETROFF et al., Respondents.

807

Franklin K. Lane III and Robinson & Powers for Appellant.

Hackett & Hubbard for Respondents.

SHINN, P. J.—Steve Zorich appeals from an adverse judgment after a court trial in an action whereby he sought a recovery of money and a declaration that he has an interest in a motion picture by virtue of an alleged partnership or joint venture agreement entered into with defendants Boris Petroff, Annabelle Sterling and J. Donald Patton.

The complaint alleges that on May 28, 1952, a written agreement designated ''Temporary Agreement'' was executed by plaintiff, Petroff, Mrs. Sterling and Patton by which the parties agreed to form a motion picture company for the purpose of producing, selling and distributing a motion picture devoted to the folk dances of various nations and to be entitled ''World Dances.'' Petroff was to produce and direct the picture in consideration of 50 per cent of the net profits; Mrs. Sterling was to be secretary-treasurer of the company and agreed to advance $4,000 toward the cost of production in consideration of 15 per cent of the profits; Patton was to be the general manager. Plaintiff was to have the title of associate producer and ''to share equally with J. Donald Patton of the remainder of the profits after the percentage is allowed the parties contributing the remainder of the monies necessary for the completion of the picture, estimated cost at this time to be roughly between $15,000 and $20,000.''

The complaint also alleges that by a contemporaneous oral agreement the parties formed a joint venture or partnership with respect to said motion picture and that they agreed to

organize a corporation to conduct the business of the joint venture or partnership enterprise. The picture went into production in August 1952 and during the next four months plaintiff rendered numerous services to the enterprise as associate producer of "World Dances," which services are of the reasonable value of $225,000. It is also alleged that Petroff caused defendant Festival Pictures, Inc., to be incorporated in September 1952; the corporation is merely the *alter ego* of Petroff, who is its president; Petroff transferred "World Dances" to the corporation; no stock in the corporation has ever been issued to plaintiff, despite the fact that the parties did not intend the partnership or joint enterprise to be dissolved upon the formation of the company. Plaintiff further alleges that Mrs. Sterling agreed to advance the remainder of the completion money to the corporation, that the corporation later agreed to repay her the amount advanced in consideration of her release to Festival Pictures, Inc., of all her interest in the film, and that the company executed to her a chattel mortgage on "World Dances" as security for the repayment of the amount. Plaintiff also alleges that the transactions among Petroff, Mrs. Sterling and Festival Pictures, Inc., were in derogation of the rights of the joint venture or partnership enterprise and of plaintiff. He further alleges that defendant Albert J. Gabaig has invested $100,000 in the corporation and claims an interest in "World Dances" adverse to him. The prayer is for $225,000 as the reasonable value of plaintiff's services as associate producer and for breach of contract, for an accounting, the appointment of a receiver of Festival Pictures, Inc., and for a declaration that plaintiff has an interest in the enterprise and in "World Dances."

The answer admits the execution of the May 28, 1952 agreement, but alleges that it was mutually cancelled, terminated and rescinded by the parties thereto; alleges that the company agreed to pay $18,000 to Mrs. Sterling in consideration of a release of all liability to her under the May agreement; admits that she transferred her interest in the film to the corporation and that it mortgaged the film to her as security for repayment of the completion money. It denies the existence of a joint venture or partnership, denies that plaintiff has an interest in "World Dances" and alleges that plaintiff has been paid in full for the services he rendered.

Upon the trial a motion for nonsuit was granted as to defendant Gabaig. Annabelle Sterling did not appear in

the action, having been served by publication outside the state; her default was entered but plaintiff's counsel conceded at the trial that the court did not have jurisdiction to enter a personal judgment against her. After a trial on the merits the court made findings and entered judgment for defendants.

The court found that under the written agreement of May 28, 1952, plaintiff's percentage of the profits was to be left for further negotiations in case he obtained the completion money and that there was no agreement to give him 10 per cent of the profits; that in September 1952 plaintiff, Mrs. Sterling, Petroff and Patton agreed that Mrs. Sterling would advance the completion money in consideration of 50 per cent of the profits from ''World Dances'' and that plaintiff would receive 5 per cent to be taken from her share; early in 1953 Mrs. Sterling sold her interest in the picture to defendant Albert J. Gabaig for a valuable consideration, and Gabaig had no knowledge of the above agreements with plaintiff; plaintiff knew of the sale to Gabaig and made no objection thereto, but completely disassociated himself from the enterprise; at the time of the commencement of the present action Annabelle Sterling had no right, title or interest in the film or its profits; production of the film commenced in the autumn of 1952; plaintiff performed certain jobs in connection therewith, but had no right of management or control over the same; no profits have been realized from the production or sale of ''World Dances''; defendants did not agree to pay plaintiff a salary for his work on the picture and he has been fairly and adequately compensated for the work he did; although plaintiff did not receive screen credit as associate producer of ''World Dances'' he has suffered no damage thereby; Annabelle Sterling caused Festival Pictures, Inc., to be incorporated and the rights of Sterling and Petroff were transferred to the corporation; the corporation is not the *alter ego* of Boris Petroff.

In its conclusions of law the court determined that the agreement of May 28, 1952, did not create a partnership, that no partnership or joint venture was formed by the parties, and that plaintiff has no interest either in the film, Festival Pictures, Inc., or the property of the corporation.

The sole contention advanced by plaintiff Zorich is that the findings are unsupported by the evidence. Since the evidence at the trial was in conflict, our review of the judgment is limited to determining whether there was any substantial

evidence to support the questioned findings. (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367 [210 P.2d 757].)

Plaintiff argues the following points: (1) The court erred in concluding that the parties did not enter into a partnership or joint venture; (2) the court should have found that there was a breach of contract by defendants because (a) the evidence established that plaintiff had an interest in the picture; (b) he was entitled to screen credit as associate producer of "World Dances"; and (c) defendants transferred the assets of the venture to the corporation to the exclusion of plaintiff; (3) the finding that defendants did not agree to pay plaintiff a salary was without support in the evidence; (4) it was error to construe the temporary agreement as providing for no definite interest of plaintiff in the picture; (5) there was insufficient evidence to support the finding that defendant knew of the sale of Sterling's interest to Gabaig and failed to object to it.

As to the first point, Zorich contends that the court should have found that a partnership or joint venture existed. We cannot agree. It was not established as a matter of law that the parties entered into a partnership or joint venture. The written agreement was in evidence, and upon the basis of the agreement and evidence of the later agreements, the court properly concluded that the parties did not enter into a partnership or joint venture. Plaintiff assumed none of the financial risks of the enterprise; the court could reasonably have inferred from plaintiff's own testimony that the services he performed were limited to assisting other members of the company at Petroff's direction and that he had no right of control over the production of "World Dances" or its business affairs. The fact that he was to receive an interest in the profits of the picture in consideration for his services did not, as a matter of law, make him a partner or joint adventurer. (*Spier* v. *Lang*, 4 Cal.2d 711 [53 P.2d 138]; *Howard* v. *Societa di Unione etc. Italiana*, 62 Cal.App.2d 842 [145 P.2d 694]; *Enos* v. *Picacho Gold Min. Co.*, 56 Cal.App.2d 765 [133 P.2d 663].)

However, it is immaterial whether plaintiff became a partner or joint adventurer with defendants. The court found that he entered into certain written and oral agreements with defendants, and that defendants kept their promises. If supported by the evidence, these findings require an affirmance of the judgment.

With respect to the finding that there was an oral

modification of the temporary agreement by which the interest of Sterling was to be increased from 15 per cent to 50 per cent and a further agreement that plaintiff was to receive 5 per cent out of her 50 per cent, it is conceded by plaintiff that both Petroff and Patton testified that all parties entered into those oral agreements in September 1952. Mrs. Sterling advanced $12,000 after the agreements were made. Plaintiff merely argues that the testimony of Petroff and Patton was unworthy of belief and that there was sufficient evidence from which the court should have found that he was entitled to a 10 per cent interest in the profits. Inasmuch as there was positive evidence that plaintiff's interest was reduced by the oral agreements to the receipt of 5 per cent out of Mrs. Sterling's 50 per cent, and the court saw fit to rely upon the testimony of Petroff and Patton as against plaintiff's denials of those agreements, it is unnecessary to say more than that it is not our function to reweigh the testimony of the witnesses, and that we are bound by the trial court's determination of the facts.

With respect to the second point, the most that could be claimed by plaintiff is that at the time Mrs. Sterling sold her interest to Gabaig he had some intangible interest in the profits that might be realized from ''World Dances.'' However, the court found, as mentioned later, that while it was agreed that plaintiff would receive 5 per cent of the profits out of Sterling's 50 per cent, he stood by without objection when Mrs. Sterling announced her intention to sell her interest. She had a right to sell her interest. The other defendants would have had no right to prevent her from selling it, and the fact that she did so constituted no breach of contract on the part of the other defendants.

With respect to the claim of Zorich that he was entitled to screen credit, the court impliedly found that he was entitled to credit, but if he has not received it and does not receive it, he has suffered and will suffer no damage. It is sufficient to say on this point that there was no evidence from which the court could have placed a value upon the screen credit to be given plaintiff as an associate producer. (Civ. Code, § 3301.) It is undisputed that no profits have been realized from the picture and there was apparently a $36,000 deficit. Upon the evidence that was before the court as to the lack of success of the picture, receipt of screen ''credit'' by plaintiff could reasonably have been regarded as a detriment to him.

■ Defendants did not breach their contract by transferring the assets of the enterprise to the corporation. The written agreement provided that the parties would form a company to carry on the enterprise and implied that they contemplated a transfer to it of the story idea by Petroff and a division of profits earned by the company. The corporation was such a company. This was not a breach of the agreement and no detriment was suffered by plaintiff.

As to the third point, it is stated in plaintiff's brief that "Petroff testified that there never were any discussions about salaries except for Sterling and himself. However, he admits that it was agreed to pay appellant a salary of $25 per week. The trial court chose to believe Petroff in this regard and denied appellant any compensation for the services he rendered for three months in connection with the production of the picture." During that time plaintiff was paid $150 for his services. Plaintiff testified that he was to be paid $150 a week as associate producer and that he only agreed to accept $25 a week for expenses. The fact that the court believed the testimony of Petroff rather than that of plaintiff disposes of plaintiff's assertion that the denial of his claim for compensation was arbitrary, unjust or without support in the evidence.

■ As to point 4, there was no error in the court's construction of the temporary agreement as one under which plaintiff's share of the profits was to be left to future arrangements. It provided that plaintiff was to share equally with Patton "of the remainder of the profits after the percentage is allowed the parties contributing the remainder of the monies necessary for the completion of the picture, estimated cost at this time to be roughly between $15,000 and $20,000." Necessarily, plaintiff's share of the profits was left uncertain as to percentage or amount, since no limit was placed upon the sums that might be required for completion of the picture, or the share that would be given to the one who financed it. But the subsequent oral agreements did establish what plaintiff's share of the profits might be and those agreements were controlling.

■ Upon the fifth point, namely, the alleged lack of knowledge of plaintiff of the sale of Sterling's interest to Gabaig, plaintiff says that the finding that he had knowledge and registered no objection is unsupported by any evidence. This criticism is not borne out by the record. There was direct evidence that the sale of Mrs. Sterling's interest was discussed

and agreed upon at a meeting of the parties, plaintiff being present, held in December 1952 at the office of Sterling's attorney. Plaintiff does not attempt any statement of the evidence as to what took place during that meeting. He merely asserts that Gabaig's name was never mentioned. But he testified that he and his attorney were both present when Mrs. Sterling declared her intention of selling her interest and that he (plaintiff) took no part in the conversation. ■ Knowing of Mrs. Sterling's intentions plaintiff made no objection. It is of no consequence that Gabaig had not at that time been unearthed as a purchaser, or, if his identity was known, that it was not disclosed. There is no merit whatever in the contention that plaintiff did not know of the proposed sale of Mrs. Sterling's interest, and it is conceded that he offered no objection to it. He testified that he had nothing more to do with the production after the meeting in December 1952. His silence was acquiescence and estopped him from complaining of the sale of Mrs. Sterling's interest after it had been made.

In view of what we have said, there was no error in denying plaintiff an accounting of the corporate affairs.

Plaintiff's presentation of his appeal ignores two fundamental rules pertaining to the review of judgments, namely, that this court is not vested with jurisdiction to retry questions of fact, and that claims of insufficiency of the evidence to support the findings must be accompanied by a fair statement of the relevant evidence. The well-prepared brief of the defendants has simplified our consideration of the appeal.

The judgment is affirmed.

Wood (Parker), J., concurred.