[Civ. No. 50636. Second Dist., Div. Two. Oct. 3, 1977.]

JOHN ERICSON, Plaintiff and Respondent, v.
PLAYGIRL, INC., Defendant and Appellant.

**COUNSEL**

Harold P. Margulies, Eric T. S. Chung and Sidney Tinberg for Defendant and Appellant.

Simon Taub, Daniel R. Barbakow and Charles Murstein for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Were damages awarded here for breach of contract speculative and conjectural, or were they clearly ascertainable and reasonably certain, both in nature and in origin?

The breach of contract arose from the following circumstances: plaintiff John Ericson, in order to boost his career as an actor, agreed that defendant Playgirl, Inc. could publish without compensation as the centerfold of its January 1974 issue of Playgirl photographs of Ericson posing naked at Lion Country Safari. No immediate career boost to Ericson resulted from the publication. In April 1974 defendant wished to use the pictures again for its annual edition entitled Best of Playgirl, a publication with half the circulation of Playgirl and without advertising. Ericson agreed to a rerun of his pictures in Best of Playgirl on two conditions: that certain of them be cropped to more modest exposure, and that Ericson's photograph occupy a quarter of the front cover, which would contain photographs of five other persons on its remaining three-quarters. Defendant honored the first of these conditions but not the second, in that as the result of an editorial mixup Ericson's photograph did not appear on the cover of Best of Playgirl. Ericson thereupon sued for damages, not for invasion of privacy from unautho-

rized publication of his pictures, but for loss of the publicity he would have received if defendant had put Ericson's picture on the cover as it had agreed to do.

All witnesses testified that the front cover of a magazine is not for sale, that a publisher reserves exclusive control over the front cover because its format is crucial to circulation, that consequently it is impossible to quote a direct price for front cover space. Witnesses also agreed that a picture on the front cover of a national magazine can provide valuable publicity for an actor or entertainer, but that it is difficult to put a price on this publicity. Analogies were sought in the cost of advertising space inside and on the back cover of national magazines. In July 1974 a full-page advertisement in Playgirl cost $7,500 to $8,000, a quarter page $2,500, and the back cover $11,000. However, Best of Playgirl carried no advertising and enjoyed only half the circulation of its parent magazine.

The trial court awarded plaintiff damages of $12,500, expressly basing its award on the testimony of Richard Cook, western advertising manager for TV Guide. According to Cook, the value to an entertainer of an appearance on the cover of a national magazine is "probably close to $50,000, and I base that on this: That magazine lays on the newsstand, a lot of people that never buy it see it, and everybody that does buy it certainly sees it." Cook said that the circulation of a magazine affects the value of a cover appearance, as does the magazine's demographics, i.e., the specific audience it reaches. He based his opinion on his knowledge of Playgirl, for he had no knowledge of the circulation, demographics, or even existence of Best of Playgirl. He also quantified his opinion by stating that if the picture only occupied a quarter of the cover instead of the full cover, the value of the appearance would be only a fourth of $50,000, which was the figure used by the trial court in fixing plaintiff's damages for loss of publicity at $12,500.

## I

On appeal the sole substantial issue is that of damages, for it is clear the parties entered a contract which defendant breached.[1]

---

[1]The contract consisted of the following letter:

"I, John Ericson, hereby release to Playgirl the use of my centerfold, cropped to eliminate genital exposure, to appear as a fold-out in 'The Best of Playgirl'. Also, it is understood that a head shot of me will appear on the front cover of 'The Best of Playgirl', lower left. I further release all other pictures which appeared in the January centerfold section for use in The Best of Playgirl."

In reviewing the issue of damages we first note that the cause of action is for breach of contract and not for a tort such as invasion of privacy. Defendant is not charged with committing a civil wrong but merely with failing to keep its promise. ■ From this classification of the action as breach of contract, three important consequences affecting the measure of damages follow:

1. Damages may not be punitive or exemplary and may not be imposed as a form of chastisement (Civ. Code, § 3294).

2. Damages are limited to losses that might reasonably be contemplated or foreseen by the parties. (Civ. Code, §§ 3300, 3358; *Hadley* v. *Baxendale* (1854) 156 Eng. Rep. 145.)

3. Damages must be clearly ascertainable and reasonably certain, both in their nature and origin. (Civ. Code, § 3301.)

In each of these respects damages for breach of contract differ from damages in tort (see Civ. Code, §§ 3294, 3333); accordingly, tort precedents on the measure of damages have no direct relevancy here. Of limited application, too, is the tort rule that when calculation of the fact and amount of damages has been made difficult by defendant's wrong, courts will adopt whatever means are at hand to right the wrong. (*Bigelow* v. *R.K.O. Radio Pictures* (1946) 327 U.S. 251, 265-266 [90 L.Ed. 652, 660-661, 66 S.Ct. 574]; *Zinn* v. *Ex-Cell-O-Corp.* (1944) 24 Cal.2d 290, 297-298 [149 P.2d 177]; cf. *Cal. Lettuce Growers, Inc.* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 486-487 [289 P.2d 785, 49 A.L.R.2d 496].)

■ Plaintiff's claim of damages for breach of contract was based entirely on the loss of general publicity he would have received by having his photograph appear, alongside those of five others, on the cover of Best of Playgirl.[2] Plaintiff proved that advertising is expensive to

---

[2]Plaintiff also argues, although he did not plead or prove, a claim of implied contract in quantum meruit for the value of goods and services sold and delivered. He invokes the rule that an owner of property is competent to testify to its value, and in support of the judgment he cites his own testimony that the value of his centerfold pictures was $25,000. That testimony alone, he asserts, provided sufficient competent evidence to affirm the judgment. (*Donahue* v. *United Artists Corp.* (1969) 2 Cal.App.3d 794, 802 [83 Cal.Rptr. 131]; *Golding* v. *R.K.O. Pictures, Inc.* (1950) 35 Cal.2d 690, 700-701 [221 P.2d 95].) But the damages here involve plaintiff's loss of publicity from his nonappearance on the front cover of Best of Playgirl. The front cover of the magazine is not plaintiff's property, the photographs of plaintiff posing in Lion Country Safari are not plaintiff's property, nor are plaintiff's services in posing for the pictures property of a sufficiently tangible

buy, that publicity has value for an actor. But what he did not prove was that loss of publicity as the result of his nonappearance on the cover of Best of Playgirl did in fact damage him in any substantial way or in any specific amount. Plaintiff's claim sharply contrasts with those few breach of contract cases that have found damages for loss of publicity reasonably certain and reasonably calculable, as in refusals to continue an advertising contract. In such cases the court has assessed damages at the market value of the advertising, less the agreed contract price. (See *Metropolitan Broadcasting Corporation* v. *Lebowitz* (D.C.Cir. 1961) 293 F.2d 524 [110 App.D.C. 336, 90 A.L.R.2d 1193]; Annot., 90 A.L.R.2d 1199.) Plaintiff's claim for damages more closely resembles those which have been held speculative and conjectural, as in the analogous cases of *Jones* v. *San Bernardino Real Estate Board* (1959) 168 Cal.App.2d 661, 665 [336 P.2d 606], where the court declined to award purely conjectural damages for loss of commissions, contacts, business associations, and clientele allegedly occasioned by plaintiff's expulsion from a local realty board; and of *Fisher* v. *Hampton* (1975) 44 Cal.App.3d 741 [118 Cal.Rptr. 811], where the court rejected an award of damages for defendant's failure to drill a $35,000 oil well when geological reports opined that oil would not be found and no evidence whatever established that plaintiff had been damaged. Under normal legal rules plaintiff's claim for damages failed to satisfy the requirements of reasonable foreseeability (Civ. Code, § 3300) and reasonable certainty (Civ. Code, § 3301), and therefore took on a punitive hue (Civ. Code, § 3294).

## II

Plaintiff, however, contends that special rules of foreseeability and certainty of damages apply to loss of publicity by actors, entertainers, and other performing artists dependent upon public patronage for the success of their careers. In substance, plaintiff argues that for artists the loss of any kind of publicity is harmful and detrimental to their careers; hence for them any loss of publicity in breach of contract is compensable in damages. In order to evaluate this contention we must consider the nature and kind of publicity that plaintiff has lost.

All persons who offer personal services to the general public rely on goodwill to establish and maintain custom (cf. Bus. & Prof. Code,

nature to justify nonexpert opinion by the poser of the value of their use. Plaintiff had previously authorized use of his centerfold pictures for nothing, and there was testimony that the maximum fee for posing for a centerfold was $1,000. Plaintiff's testimony on the value of the centerfold is both irrelevant and unpersuasive.

§ 14100), and at first blush it seems reasonable to assume that the better known they are, the more likely they are to attract custom. But to be accurate we must make this assumption more precise. We must ask the question—better known for what? A lawyer who is a famous yachtsman may not necessarily attract legal business; a dentist world-renowned as a mountain climber may not necessarily improve his practice of dentistry as a consequence of his renown; a hairdresser who swims the Catalina Channel in record time may not necessarily increase the patronage of her beauty salon. ■ For publicity to be of value and result in custom it must relate to the specific aspect of the human activity that is involved. General publicity bears little relation to the repute that leads to custom and trade, for it is specific reputation that brings about gain or loss of business. (Cf. Civ. Code, §§ 46, subd. 3, 48a, subd. 4(b).) It follows that damages for loss of publicity in breach of contract must be tied to loss of publicity for some particular event, such as a musical concert or a prize fight, or loss of publicity for some continuing activity, such as the conduct of a specific business at a specific location or the practice of a particular skill or art. Consequently, damages from loss of general publicity alone will almost always be wholly speculative and conjectural.

Plaintiff, however, insists that actors and performing artists fall in a special category apart from other purveyors of personal services. He argues that an actor needs an audience to perform; that an actor must be visible to patrons of his art to become successful; that only by becoming publicly visible can an actor become favorably known to patrons of his art and to producers of dramatic productions who provide him with employment; therefore all publicity is valuable to an actor, and the loss by an actor of any publicity is injurious and damaging. To a considerable extent the argument is sound—except for the breadth of its final conclusion. In our view it is not any kind of publicity, celebrity, or notoriety that is valuable to an artist's career, but instead the publicity which is valuable to the artist is publicity related to the performance of his art. Publicity of this sort, gained by the performance or production of his art, is the type of publicity that creates good will, reputation, and custom, and which taken at the flood leads to fame and fortune. Hence the importance to actors of appearances on the stage and screen, to musicians of appearances in concerts, and to writers and composers of credits for the works they have written or composed. Loss of publicity of this type as a result of breach of contract is compensable to an actor, musician, or writer, because the lost publicity is directly connected with the performance of his art, grows out of his profession, and directly affects his earning power.

The compensability in damages for an artist's loss of publicity in connection with his art as a result of breach of contract was established by a series of English cases that culminated in *Herbert Clayton and Jack Waller Ld.* v. *Oliver* [1930] A.C. 209. In that case the House of Lords squarely held that an actor whose contract of employment has been breached has a cause of action not only for loss of salary but for loss of publicity resulting from the denial of the opportunity to appear in public in his professional capacity. California has adopted the English rule in *Colvig* v. *R.K.O. General, Inc.* (1965) 232 Cal.App.2d 56 [42 Cal.Rptr. 473].[3] But an examination of the cases allowing recovery of damages for loss of publicity as a result of breach of contract discloses that in each instance the lost publicity grew out of the loss of the artist's exercise of his profession, i.e., loss of the opportunity to act, to broadcast, to sing, to conduct an orchestra, to entertain; or resulted from the loss of credit to the artist for professional services connected with a particular work, i.e., a script, play, musical composition, design, production, and the like.[4] Publicity in both these categories performs a similar function in that it permits patrons and producers to evaluate the artist's merits in connection with the performance of his art. Damages for the loss of such publicity does not present insuperable difficulties in calculation, for the artist's future earnings can be directly correlated to his box office appeal or to his known record of successes. But even here proof of damages from loss of publicity must be reasonably certain and specific, and those claims that appear speculative and conjectural are rejected. For example, in *Zorich* v. *Petroff* (1957) 152 Cal.App.2d 806, 811 [313 P.2d 118], the court declined to award damages to an associate producer of a motion picture for defendant's failure to give him screen credit. In that case the motion picture was a failure, no evidence of actual damage was introduced, and the court opined that screen credit, if given, might have turned out to be a liability rather than an asset.

[3]New York still rejects the rule that an artist's loss of publicity as a result of his employer's violation of contract is compensable in damages. (*Amaducci* v. *Metropolitan Opera Association* (1969) 33 App.Div.2d 542 [304 N.Y.S.2d 322].)

[4]*Herbert Clayton and Jack Waller Ld.* v. *Oliver* [1930] A.C. 209 (actor not allowed to act); *Marbe Edwards* v. *Daly's Theater, Inc.* [1928] 1 K.B. 269 (actress not allowed to act); *Bunning* v. *Lyric Theater Ltd.* [1894] 71 L.T. 396 (musical director not allowed to conduct orchestra); *Colvig* v. *R.K.O. General, Inc.* (1965) 232 Cal.App.2d 56 [42 Cal.Rptr. 473] (radio announcer not allowed to announce); *Taloney* v. *Criterion etc.* [1936] 2 All E.R. 1625 (screen credit not given to author of script); *Paramount Productions* v. *Smith* (9th Cir. 1937) 91 F.2d 863 (screen credit not given to author of original story from which picture was made); *Lloyd* v. *California Pictures Corp.* (1955) 136 Cal.App.2d 638 [289 P.2d 295] (screen credit and star billing not given to Harold Lloyd). For a limited application of the rule to business employment, see Restatement Second of Agency section 433, and *McLaughlin* v. *Union-Leader Corporation* (1955) 99 N.H. 492 [116 A.2d 489] (advertising manager of newspaper not allowed to work).

A yawning gulf exists between the cases that involve loss of professional publicity and the instant case in which plaintiff complains of loss of mere general publicity that bears no relation to the practice of his art. His situation is comparable to that of an actor who hopes to obtain wide publicity by cutting the ribbon for the opening of a new resort-hotel complex, by sponsoring a golf or tennis tournament, by presenting the winning trophy at the national horse show, or by acting as master of ceremonies at a televised political dinner. Each of these activities may generate wide publicity that conceivably could bring the artist to the attention of patrons and producers of his art and thus lead to professional employment. Yet none of it bears any relation to the practice of his art. Plaintiff's argument, in essence, is that for an actor all publicity is valuable, and the loss of any publicity as a result of breach of contract is compensable. Carried to this point, we think his claim for damages becomes wholly speculative. It is possible, as plaintiff suggests, that a television programmer might have seen his photograph on the cover of Best of Playgirl, might have scheduled plaintiff for a talk show, and that a motion picture producer viewing the talk show might recall plaintiff's past performances, and decide to offer him a role in his next production. But it is equally plausible to speculate that plaintiff might have been hurt professionally rather than helped by having his picture appear on the cover of Best of Playgirl, that a motion picture producer whose attention had been drawn by the cover of the magazine to its contents depicting plaintiff posing naked in Lion Country Safari might dismiss plaintiff from serious consideration for a role in his next production. The speculative and conjectural nature of such possibilities speaks for itself.

Assessment of the value of general publicity unrelated to professional performance takes us on a random walk whose destination is as unpredictable as the lottery and the roulette wheel. When, as at bench, damages to earning capacity and loss of professional publicity in the practice of one's art are not involved, we think recovery of compensable damages for loss of publicity is barred by the Civil Code requirement that damages for breach of contract be clearly foreseeable and clearly ascertainable. (§§ 3300, 3301.)

Plaintiff relies heavily on the somewhat analogous case of *Leavy* v. *Cooney* (1963) 214 Cal.App.2d 496 [29 Cal.Rptr. 580]. In that case Leavy, the prosecutor in the notorious *Chessman* case, appeared as narrator and participant in a motion picture depicting the prosecution and imprisonment of Chessman, under an agreement that the picture would be shown

only on television as a news broadcast and not in motion picture theaters. Defendant breached that agreement. In affirming an award of compensatory damages of $7,500 to plaintiff, the court pointed out that plaintiff's professional reputation could well have been damaged by the publicity occasioned by the breach of contract, that it was within the jury's discretion to assess the detriment caused. (214 Cal.App.2d at pp. 501-502.) Two critical factors distinguish *Leavy* from the cause before us: First, the publicity in *Leavy* intimately and directly related to the prosecutor's practice of his profession. Second, the publicity was *unwanted,* and defendant's conduct constituted the tort of invasion of privacy as well as breach of contract. At bench, the gist of plaintiff's claim is the precise opposite, for he seeks damages for loss of *wanted* publicity. No injury to personal rights and no relation to professional activities are involved. ■ We conclude that the damages awarded by the trial court are speculative and conjectural, and that plaintiff failed to establish any ascertainable loss for which he is entitled to compensatory damages.

### III

Plaintiff, however, is entitled to recover nominal damages for breach of contract. We evaluate plaintiff's right to nominal damages by analogy to Civil Code section 3344, which provides minimum statutory damages of $300 for knowing commercial use of a person's name or likeness without his consent. The statute's obvious purpose is to specify an amount for nominal damages in situations where actual damages are impossible to assess. Accordingly, although we find no support for any assessment of compensatory damages in plaintiff's favor because of the wholly speculative nature of the detriment suffered by plaintiff as a result of his nonappearance on a fourth of the cover of Best of Playgirl, plaintiff is entitled to nominal damages for breach of contract, which we fix in the sum of $300.

The judgment is modified to reduce the amount of damages to $300, and, as so modified, the judgment is affirmed. Costs on appeal to plaintiff.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied November 1, 1977, and respondent's petition for a hearing by the Supreme Court was denied November 30, 1977.