752 F.2d 369
 40 Fed.R.Serv.2d 1300, 1985-1 Trade Cases 66,367
 LANDMARK DEVELOPMENT CORPORATION, and Serv-Well Furniture
Company, Inc., Plaintiffs-Appellants,
v.
CHAMBERS CORPORATION, Defendant-Appellee.
LANDMARK DEVELOPMENT CORPORATION, and Serv-Well Furniture
Company, Inc., Plaintiffs-Counterclaim-Defendants-Appellees,
v.
CHAMBERS CORPORATION, Defendant-Counterclaimant-Appellant.
 Nos. 83-6026, 83-6032.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 8, 1984.
Decided Jan. 18, 1985.
 
 Howard F. Daniels, Blecher, Collins & Weinstein, Los Angeles, Cal., for Landmark Development Corp., et al.
 Max Gillam, Latham & Watkins, Los Angeles, Cal., for Chambers Corp.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, Chief Judge, GOODWIN and KENNEDY, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from the district court's grant of summary judgment for defendant on an antitrust claim and for plaintiffs on a counterclaim for fraud and breach of contract. We affirm.
 
 
 2
 Chambers Corporation manufactures kitchen stoves and ovens. Serv-Well Furniture Company, a California retail and wholesale applicance store, has purchased Chambers products since 1975 from Schreiber, Chambers' only authorized distributor in Southern California.
 
 
 3
 Serv-Well believed other dealers were receiving Chambers products from Schreiber at a lower price. It devised a scheme whereby Landmark Development Corp., a paper corporation founded by officers of Serv-Well, would purchase large quantities of goods directly from Chambers by falsely claiming the goods were not intended for resale but for installation by Landmark in modular houses on the Alaska North Slope. Landmark obtained two train carloads of Chambers' products and diverted them to Serv-Well who resold them to retailers in Schreiber's exclusive territory.
 
 
 4
 When Chambers learned of the diversion, it informed Landmark that it would sell Landmark no more goods absent a satisfactory explanation. When it received no explanation, Chambers terminated shipments to Landmark.
 
 
 5
 Landmark and Serv-Well then filed this suit, alleging Chambers' refusal to sell to Landmark was a per se violation of section 1 of the Sherman Act, 15 U.S.C. Sec. 1 (1982). The complaint alleged that Chambers had conspired with its distributors, Schreiber and R & K Distributors, Inc. (Chambers' only distributor in Northern California), to refuse to deal with Landmark and Serv-Well as part of a plan to restrict competition and maintain retail prices. Chambers counterclaimed for fraud, breach of contract, interference with contractual relations, and breach of implied covenant of good faith and fair dealing.
 
 
 6
 Both sides moved for summary judgment. The district court granted summary judgment for Chambers on the complaint and for Landmark and Serv-Well on the counterclaims.
 
 I.
 
 7
 Landmark and Serv-Well assert Chambers and Schreiber conspired to terminate them in order to eliminate price competition--a per se violation of the antitrust laws. Chambers moved for summary judgment on the ground that its decision to refuse to sell to Landmark was a unilateral one, motivated by Landmark's deceptive conduct and Chambers' adherence to a system of exclusive regional distributorships.
 
 
 8
 Chambers offered detailed statements of its sales manager and a consistent pattern of marketing and warranty servicing requirements to demonstrate the exclusivity of its distributorship system. In response Landmark and Serv-Well rely on a provision in Chambers' contract with Schreiber stating Schreiber could sell outside its "primary" territory. As Schreiber's chief sales executive explained, however, this clause merely indicated that Chambers did not enforce its exclusive distribution system contractually. The uncontradicted evidence established that Chambers did enforce such a system through a course of dealing. Moreover, the record established that Serv-Well's vice-president knew of Chambers' exclusive distributorship agreement with Schreiber--he admitted he fabricated the story that Chambers would use the goods in Alaska because he knew Alaska was outside Schreiber's territory.
 
 
 9
 Landmark's fraud in purchasing products purportedly for its own use in Alaska and reselling them to dealers in Schreiber's exclusive territory was a legitimate business reason for Chambers' refusal to sell more of its product to Landmark. The undisputed proof of this legitimate business reason was sufficient to preclude an inference of a vertical price-maintenance conspiracy from the refusal to sell to Landmark alone, and to impose upon plaintiffs the burden of advancing additional specific evidence of such a conspiracy. "Once allegations of a conspiracy have been rebutted by probative evidence showing alternative, legitimate business reasons for the defendant's conduct, to avoid summary judgment the plaintiff must come forward with specific factual support for its allegations." Program Engineering, Inc. v. Triangle Publications, Inc., 634 F.2d 1188, 1195 (9th Cir.1980). See also First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280, 88 S.Ct. 1575, 1588, 20 L.Ed.2d 569 (1968); Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 672 (9th Cir.1980).
 
 
 10
 The Supreme Court recently described the kind of specific factual support required to bar summary judgment in these circumstances. More is required than proof of termination of a dealer following competitor complaints:
 
 
 11
 There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently.... [T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others "had a conscious commitment to a common scheme designed to achieve an unlawful objective."
 
 
 12
 Monsanto Co. v. Spray-Rite Service Co., --- U.S. ----, ----, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984), quoting Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 (3d Cir.1980). See also Filco v. Amana Refrigeration, Inc., 709 F.2d 1257, 1263 (9th Cir.1983).
 
 
 13
 Plaintiffs rely upon an exchange of letters between Schreiber and Chambers in which Schreiber thanked Chambers for sending a representative to visit Schreiber's dealers with a Schreiber representative after the Landmark diversion for the purpose of "turning around the Chambers situation in Southern California;" and upon evidence that Schreiber received many complaints from its dealers after the diversion. As the district court said:
 
 
 14
 This evidence, taken in context, merely shows Chambers' concern that the merchandise which Serv-Well acquired through misrepresentation was disrupting Chambers' marketing system in Southern California, and that Chambers wished to assure Schreiber that it did not intend these consequences.
 
 
 15
 In light of the strong legitimate business motivation for Chambers' conduct, such evidence is too "highly ambiguous" to justify an inference of an agreement to fix prices, particularly since it would not be inconsistent with the antitrust laws for Schreiber to request Chambers to honor and enforce the exclusive territorial distributorship. See JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc., 698 F.2d 1011, 1018 (9th Cir.1983); A.H. Cox & Co. v. Star Machinery Co., 653 F.2d 1302, 1306-07 (9th Cir.1981); Golden Gate Acceptance Corp. v. General Motors Corp., 597 F.2d 676, 678 (9th Cir.1979).
 
 II.
 
 16
 Landmark and Serv-Well argue that the district court erred in denying their motion under Rule 56(f) for further discovery with respect to the antitrust claims.
 
 
 17
 Landmark and Serv-Well had reasonable access to information concerning Chambers' marketing decisions during the 10 months of discovery prior to the court's ruling. All documents sought had been produced and all interrogatories had been answered. Although plaintiffs had not deposed every Chambers and Schreiber employee they desired, they had taken the depositions of Chambers' former national sales manager and of various Schreiber personnel including Schreiber's chief sales executive.
 
 
 18
 Failure to take further depositions apparently resulted largely from plaintiffs' own delay. The parties agreed depositions would be taken between February and May, 1983. June and July were to be used for "completion of discovery, filing of any summary judgment motions, in limine motions and other pretrial motions." Under this schedule, most depositions should have been completed by May 19, 1983 when Chambers moved for summary judgment. Landmark and Serv-Well claim they delayed taking depositions because Chambers failed to produce the two letters eventually received from Schreiber which provided a foundation for further inquiry. The district court was not required to accept this explanation. Landmark and Serv-Well had the letters by February 1983. There is no explanation for their failure to proceed with the additional depositions promptly. Moreover, the letters do not appear to have the vital significance plaintiffs now attribute to them.
 
 
 19
 The district court's refusal to permit further discovery before ruling on the motions for summary judgment was not an abuse of discretion. F.R.C.P. 56(f); Program Engineering, 634 F.2d at 1193; British Airways Bd. v. Boeing Co., 585 F.2d 946, 954 (9th Cir.1978).
 
 III.
 
 20
 The district court properly granted summary judgment to Landmark and Serv-Well on Chambers' counterclaims. Chambers offered no proof of measurable damages. Chambers was fully paid for the goods it shipped to Landmark and continues to sell goods to Schreiber. Chambers claimed the Landmark diversion "disrupted" its sales in Southern California, but failed to support this conclusory and speculative assertion. Ericson v. Playgirl, Inc., 73 Cal.App.3d 850, 854, 140 Cal.Rptr. 921 (1977); Agnew v. Parks, 172 Cal.App.2d 756, 768-69, 343 P.2d 118 (1959).
 
 
 21
 The judgments are AFFIRMED.